# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Keith Snyder** and **Susan Mansanarez**, individually and on behalf of all others similarly situated, | Case No. 1:14-cv-8461 |
| Plaintiffs, | **AMENDED COMPLAINT** |
| v. | Class Action |
| **Ocwen Loan Servicing, LLC**, | Jury Trial Demanded |
| Defendant. | Hon. Matthew F. Kennelly |

Plaintiffs Keith Snyder and Susan Mansanarez ("Plaintiffs"), individually and on behalf of all others similarly situated, make the following allegations and claims against Ocwen Loan Servicing, LLC ("Ocwen" or "Defendant"), upon personal knowledge, investigation of their counsel, and on information and belief.

1.      This action seeks redress for business practices that violate the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA") as well as the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").

2.      This Court has jurisdiction to grant the relief sought by Plaintiffs pursuant to 47 U.S.C. § 227(b), 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1331.

3.      Venue is proper in this district as Defendant resides within the district and does business here.

## I.  PARTIES

4.      Plaintiff Keith Snyder is a natural person who resides in San Diego, California.  Plaintiff Snyder is the account holder of a cellular telephone number and

pursuant to the terms of his contract is charged for each call within the meaning of 47 U.S.C. § 227(b)(1)(A)(iii). He is also a "consumer" as defined by 15 U.S.C. § 1692a(3) and allegedly obligated to pay a "debt" as defined by 15 U.S.C. § 1692a(4), specifically a residential home loan incurred primarily for personal, family, and household purposes.

5.      Plaintiff Susan Mansanarez is a natural person who resides in Federal Way, Washington.  Plaintiff Mansanarez is the account holder of a cellular telephone number and pursuant to the terms of her contract is charged for each call within the meaning of 47 U.S.C. § 227(b)(1)(A)(iii).

6.      Defendant Ocwen Loan Servicing, LLC is one of the largest non-bank mortgage servicers in the United States. Defendant services mortgage loans in all 50 states, including Illinois. A significant part of Ocwen's business operations are conducted in this district. Most importantly, Ocwen's office for receipt of payments is located in Carol Stream, Illinois.

7.      Ocwen is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because it uses instrumentalities of interstate commerce including the mails in its business, the principal purpose of which is the collection of debts owed or due or asserted to be owed or due to another. Many of the debts Ocwen attempts to collect upon were in default at the time they were obtained by Ocwen.

## II.  FACTS

### A.  Plaintiff Snyder

8.      In 2001, Plaintiff Snyder purchased a home in Las Vegas, Nevada located on Lido Isle Court (the "Las Vegas Home"). In 2006, he refinanced his mortgage and took out two loans, the first with Countrywide Home Loans and a junior-position Home Equity Line of Credit (the "HELOC" loan) with Greenpoint Mortgage Funding. Both loans were secured by deeds of trust. The HELOC had an approximate principal balance of $100,000. He made timely payments in full for several months, but due to a

significant and unexpected drop in his income could not afford to continue to make payments on either loan.

9.      In April 2007, Plaintiff Snyder made his last payment on both loans and the senior creditor began the process of non-judicial foreclosure as permitted under Nevada law.

10.     On or about January 18, 2008, the Las Vegas Home was sold at a trustee's sale for $625,727.34, fully satisfying the first mortgage obligation of $585,504.56 and leaving at least forty thousand dollars (specifically $40,222.78) to pay towards the HELOC. The outstanding debt on the HELOC at the time of foreclosure was $99,968.08 inclusive of late fees and other charges.

11.     Plaintiff Snyder received no communication from any creditor regarding the HELOC for more than eighteen months after the foreclosure. In early August 2009, he received a notice from a new servicer informing him that the right to collect payments on the HELOC had been transferred from Greenpoint to the new servicer and stating that the payoff balance on the debt was $126,049.08 — far in excess of the principal amount at the time of foreclosure and reflecting no credit at all for funds received from the foreclosure sale.

12.     By letter dated July 11, 2014, Defendant Ocwen notified Plaintiff Snyder that the servicing rights had been transferred to it. A copy of that letter is attached here as Exhibit "A", and has been redacted to preserve Plaintiff Snyder's personal identifying information. Plaintiff Snyder received this letter on or about July 14, 2014.

13.     The letter is styled as a notice of servicing transfer as required by federal law and tells Plaintiff Snyder that Defendant Ocwen Loan Servicing, LLC, "will collect the payments going forward." The letter further asks Plaintiff to "contact Ocwen Loan Servicing, LLC for information about enrolling in an automatic payment program."

14.     Ocwen also sent Plaintiff Snyder another demand for payment; a letter also dated July 11, 2014. A copy of that letter is attached as Exhibit "B" and has also

been redacted to preserve Plaintiff Snyder's personal identifying information. Plaintiff Snyder received this letter on or about July 14, 2014.

15.     This letter states that the principal balance on the alleged debt is $99,968.08 — exactly to the penny the balance as of the time of foreclosure in January 2008. However, Defendant also added nearly $80,000 in interest together with $2,560.90 in late charges for a total demand of $181,673.67. However, even this figure was not an accurate payoff amount, which Ocwen said could be obtained upon request.

16.     Neither of these two written demands for payment indicated that the debt was well beyond the statute of limitations or advised Plaintiff that the debt was legally unenforceable because the creditor failed to obtain a deficiency judgment or seek a hearing to determine the amount of indebtedness as required by the law of the State of Nevada.

### B.     Plaintiff Mansanarez

17.     In approximately 1995, Plaintiff Mansanarez began renting a home in Federal Way, Washington located on 7th Avenue Southwest ("Federal Way Home").

18.      In approximately 2006, Plaintiff Mansanarez purchased the Federal Way Home.

19.     In approximately January 2014, Defendant Ocwen notified Plaintiff Mansanarez that the servicing rights for the Federal Way Home had been transferred to it.

### III.  TCPA ALLEGATIONS

20.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing and debt collection practices. The TCPA regulates, inter alia, the use of automated dialing systems. Specifically, section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number

in the absence of an emergency or the prior express consent of the called party. The TCPA's definition of an automatic telephone dialing system includes a "predictive dialer." *Soppet v. Enhanced Recovery Co.*, LLC, 679 F.3d 637, 638-9 (7th Cir. 2012).

21. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

22. On January 4, 2008, the FCC issued a Declaratory Ruling confirming that autodialed calls and calls using an artificial voice or pre-recorded message to a wireless number by a creditor or on behalf of a creditor are permitted only if the calls are made with the "prior express consent" of the called party. In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 ("FCC Declaratory Ruling"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

23. The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." FCC Declaratory Ruling, 23 F.C.C.R. at 564-65 (¶10).

24. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff gave her express consent to Defendant to use an autodialer to call her cell phone within the meaning of the statute. See FCC Declaratory Ruling, 23 F.C.C.R. at 565 (¶ 10).

25.     Directly as well as through its subsidiaries, contractors and agents, Defendant employs hundreds of persons at various call centers throughout the country. These calling centers use automatic telephone dialing systems and computerized account information to track, record, and maintain the hundreds of thousands of debts collected by Defendant.

26.     A significant portion, if not a majority, of Defendant's business operations are dedicated to servicing consumer loans that are in default, foreclosure, have been charged off by the original lender, or are subject to discharge in bankruptcy

27.     Defendant's regular business practices include making repeated phone calls, as well as sending notices, statements, bills, and other written correspondence to persons it believes responsible for paying past-due accounts.

28.     Part of Defendant's strategy for servicing consumer loans involves the use of an automatic telephone dialing system ("ATDS") and/or automated or prerecorded messages.

29.     Defendant uses ATDS equipment and software that has the capacity to store or produce telephone numbers to be called and which includes auto-dialers and predictive dialers.

30.     Defendant makes calls using an ATDS and/or artificial or prerecorded voice to cellular telephones whose owners have not provided express prior consent to receive such calls.

**A.     Plaintiff Snyder's TCPA Allegations**

31.     In mid-July of 2014, almost immediately after Defendant acquired the servicing rights to the HELOC, Ocwen began calling Plaintiff Snyder on his cell phone. Plaintiff Snyder is the account holder with AT&T Mobility for cellular service and has a phone number assigned to that account ending in 7690 (the "7690 Number").

32.     At no time did Plaintiff Snyder list the 7690 Number on an application for credit with Countrywide or Greenpoint for the simple reason that he did not have the number when he applied for the mortgage loans. Plaintiff Snyder was assigned the 7690 Number in 2012, so it would have been impossible in 2006 to have listed that number on his original application for credit.

33.     Plaintiff Snyder is informed and believes and on that basis alleges that Ocwen makes a regular business practice of using "skip tracing" methods such as pulling credit histories and searching publicly available databases to obtain contact information for persons it believes are obligated for consumer debts it services. Plaintiff Snyder believes that Ocwen obtained the 7690 Number via skip tracing and included it in its automated telephone dialing system's database.

34.     At no time did Ocwen or any predecessor in interest have Plaintiff Snyder's express consent to use an automatic telephone dialing system to call him at the 7690 Number. At no time did Ocwen or any predecessor in interest have Plaintiff Snyder's express consent to use an ATDS and/or artificial or prerecorded voice to call him at the 7690 Number.

35.     Many of the calls Ocwen placed to Plaintiff Snyder at the 7690 Number were made using an artificial and/or pre-recorded voice. When Plaintiff Snyder answered the phone, he heard a message stating that the call was intended to reach Keith Snyder about "an important business matter" and inviting him to press one of an enumerated list of digits to reach a particular department. He tried to connect with a live staffer but the call terminated. When he called back using the Caller ID as listed (877-746-2936, the same as listed on the written communications from Ocwen), again he was confronted with a telephone voice message tree, which terminated his call before he could connect with a live staffer. Plaintiff also sent email messages to the address listed on the written communications disputing the debt and asking the calls to stop.

36.     Ocwen made at least three more calls to Plaintiff at the 7690 Number using an identical automated and/or prerecorded message. Plaintiff believes that there were additional calls placed by Defendant to the 7690 Number that were not preserved and seeks discovery to identify those additional calls.

37.     Plaintiff never listed his cellular telephone number in or on any documents during a transaction with Defendant (or any creditor), nor did he subsequently give his express consent to receive calls at the 7690 Number. At no time did he consent to receiving calls using an ATDS and/or artificial or prerecorded voice.

38.     Defendant is responsible either directly or indirectly for making the above-described ATDS and/or artificial or prerecorded calls.

39.     In calling Plaintiff on his cellular telephone line multiple times at various times per day using an ATDS and without his consent, Defendant violated 47 U.S.C. § 227(b).

40.     Defendant intends to continue to make similar ATDS and/or artificial or prerecorded calls to persons on their cellular telephones throughout the entire United States.

**B.     Plaintiff Mansanarez's TCPA Allegations**

41.     In approximately January of 2014, almost immediately after Defendant acquired the servicing rights to the Federal Way Home, Ocwen began calling Plaintiff Mansanarez on her cellular telephone.

42.     Plaintiff Mansanarez is the account holder with T-Mobile for cellular service and has a phone number assigned to that account ending in 7110 (the "7110 Number").

43.     In approximately January of 2014, Plaintiff Mansanarez requested that Ocwen cease calling her on her cellular telephone.

44.    Many of the calls Ocwen placed to Plaintiff Mansanarez at the 7110 Number were made using an ATDS and/or artificial or prerecorded voice.

45.    On many occasions, Plaintiff Mansanarez requested that Ocwen cease calling her phone number assigned to that account ending in 7110.

46.    Plaintiff Mansanarez received many calls on her cell phone number assigned to that account ending in 7110 more than 31 days after requesting that Ocwen cease calling her.

47.    During one call, Plaintiff Mansanarez asked the Ocwen representative why the company continued to call her cellular telephone. The Ocwen representative responded by explaining that her number had been placed in their automated calling system. Plaintiff Mansanarez demanded that Ocwen representative remove her number from their automated calling system. Ocwen, however, continued to place calls Plaintiff Mansanarez at the 7110 Number using an ATDS and/or artificial or prerecorded voice.

48.    Defendant is responsible for making the above-described automated and/or pre-recorded calls.

49.    In calling Plaintiff on her cellular telephone line multiple times at various times per day using an ATDS and without her consent, Defendant violated 47 U.S.C. § 227(b).

50.    Defendant intends to continue to make similar ATDS and/or artificial or prerecorded calls to persons on their cellular telephones throughout the entire United States.

## IV.  FDCPA ALLEGATIONS

51.    Using illegal conduct to collect a consumer debt, including placing calls in violation of the TCPA, is unfair and unconscionable and therefore violates the FDCPA, including but not limited to 15 U.S.C. § 1692f.

52.     Ocwen in its communications with Plaintiff Snyder also falsely represented the legal status of the HELOC loan by failing to inform Plaintiff that the debt was, in fact, not legally owed by him. This failure to disclose the true legal status of the HELOC loan was false, deceptive, and misleading and therefore violates 15 U.S.C. §§ 1692e(2)(A) and 1692e(10), among other provisions of the FDCPA.

53.     Ocwen also attempted to collect interest, fees, charges, and expenses from Plaintiff Snyder that were not expressly authorized by the agreement creating the debt or permitted by law, further violating 15 U.S.C. § 1692f in at least three ways.

54.     **First**, Ocwen calculated interest charge improperly after the date of default and continued to assess interest well after the debt had been charged off by the original creditor.

55.     **Second**, Ocwen failed to comply with Nevada law relating to deficiency judgments and is barred from collecting or attempting to collect any amount on that debt. Nevada law requires that a creditor bring a judicial action in order to collect on a mortgage debt that is not wholly satisfied by a trustee's sale, which must be brought within six months of the sale. Nev.Rev.Stat. § 40.455. Assuming such an action is timely filed, the court will hold a hearing and take evidence to determine the amount of the deficiency, which is either the difference between the debt owed and the sale price or the difference between the debt owed and the fair market value of the property, whichever is less. Nev.Rev.Stat. § 40.459.

56.     At no time did any creditor bring an action against Plaintiff Snyder to determine the amount of a deficiency remaining after the trustee's sale. As noted above, the fair market value of the property at the time of the sale was $625,727.34 and the amount of indebtedness on the first mortgage was $585,504.56, leaving a surplus of $40,222.78 to apply towards the HELOC. With a total indebtedness of $99,968.08, the maximum possible deficiency that a creditor could have obtained was $59,745.30 — assuming a deficiency action had been commenced.

57.     Ocwen is presently demanding more than three times this amount, without reference to any legal basis for asserting liability by Plaintiff Snyder for this debt. This violates the FDCPA, including but not limited to 15 U.S.C. § 1692f(1).

58.     **Third**, the debt is now well past the statute of limitations for an action founded upon a debt created in a written instrument, which is six years under Nevada law. Nev.Rev.Stat. § 11.190.

59.     Plaintiff Snyder is informed and believes and on that basis alleges that Ocwen tracks the date that it believes any given mortgage loan it services will go past the statute of limitations. Ocwen trains its servicing agents to seek a payment on those accounts, however small, because some state's laws will revive the legal obligation and restart the statute of limitations if a consumer makes a partial payment. Ocwen regularly enters into payment plans with consumers to encourage just this sort of partial payment.

60.     Many consumers do not know if the loans that Ocwen is attempting to collect are beyond the statute of limitations. Consumers also do not realize that making a partial payment on a debt or making a written promise to pay in some states will, in many instances, revive the debt. When Ocwen contacts consumers to collect on a debt, it encourages those consumers to believe that they could experience serious negative consequences, including being sued in a collection action, if they fail to pay or make a partial payment. Similarly, many consumers believe (and Ocwen encourages this belief by the statements it makes and does not make) that making a partial payment on a debt in response to Ocwen's collection efforts is a positive action that can avert the negative consequences of nonpayment.

61.     If consumers knew, in connection with a past-statute debt, that Ocwen had no legal means to enforce collection or understood that making a partial payment or written promise to pay would revive it, many consumers would choose not to make a payment or a written promise to pay.

62.   In the above-detailed ways, and others as may be further developed via discovery, Ocwen violated the FDCPA and is responsible for damages and attorneys' fees to Plaintiff and all others similarly situated. Ocwen should similarly be enjoined from further such business practices.

## V.  CLASS ACTION ALLEGATIONS

63.   Plaintiffs Snyder and Mansanarez bring this class action pursuant to Federal Rule of Civil Procedure 23 individually and behalf of all others similarly situated.

64.   The proposed TCPA Class ("TCPA Class") that Plaintiff Snyder and Plaintiff Mansanarez seek to represent is defined as follows:

> All persons in the United States to whom:  (a) Defendant and/or a third party acting on Defendant's behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) through the use of an automatic telephone dialing system or an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

65.   The proposed FDCPA Class ("FDCPA Class") that Plaintiff Snyder seeks to represent is defined as follows:

> All persons in the United States from whom: (a) Defendant has collected or attempted to collect on a consumer debt that is no longer enforceable in a court action; (b) because it is past the statute of limitations under the applicable law of the state where the obligation was incurred; (c) at any time in the period that begins one year before the date of filing this Complaint to trial.

Excluded from the Classes are Defendant and any entities in which Defendant or their subsidiaries or affiliates have a controlling interest, Defendant's agents and employees, the judicial officer to whom this action is assigned and any member of the court staff and immediate family, and claims for personal injury, wrongful death, and emotional distress.

66.     Numerosity.  Plaintiffs do not know the exact number of members in the Classes, but based upon Defendant's public statements regarding their business in the United States and investigation of their counsel, Plaintiffs reasonably believe that Class members for both proposed classes number in the tens of thousands, if not more.  The estimated Class size includes consumers who are obligated on debts serviced by or placed with Defendant, as well as persons who co-signed for those debts, and all other persons whom Defendant or their affiliates, agents, contractors, or employees dialed (or mis-dialed).

67.     Commonality.  There are questions of law and fact common to the members of the TCPA Class that predominate over any questions affecting only individual members.

a.     As to Plaintiffs Snyder and Mansanarez and the TCPA Class, whether Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated 47 U.S.C. § 227(b)(1)(A) by making any call, except for emergency purposes, to a cellular telephone number using an ATDS or artificial or prerecorded voice;

b.     As to Plaintiffs Snyder and Mansanarez and the TCPA Class, whether Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf knowingly and/or willfully violated 47 U.S.C. § 227(b)(1)(A) by making any call, except for emergency purposes, to a cellular telephone number using an ATDS or artificial or prerecorded voice; and

c.     As to Plaintiffs Snyder and Mansanarez and the TCPA Class, whether Defendant is liable for ATDS generated and/or automated or prerecorded calls promoting Defendant's products and/or services made by Defendant's affiliates, agents, and/or other persons or entities acting on Defendant's behalf;

68.     There are similarly questions of law and fact common to the members of the FDCPA Class that predominate over any questions affecting only individual members.

       a.     As to Plaintiff Snyder and the FDCPA Class, whether Defendant has a common practice of tracking statutes of limitations, maintains a database or list of debts it believes to be unenforceable, has policies and procedures in place to prevent collection on out-of-statute debts, has policies and procedures to make (or avoid making) disclosures to consumer regarding whether the debts may not be legally payable because the statute of limitations has expired; and

       b.     As to Plaintiff Snyder and the FDCPA Class, whether Defendant encourages consumers to make partial payments in order to restart an already expired statutory period.

69.     <u>Typicality</u>.   Plaintiffs' claims are typical of the claims of the Classes. Plaintiffs' claims, like the claims of Classes arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

70.     <u>Adequacy</u>.  Plaintiffs will fairly and adequately protect the interests of the Classes, and have retained attorneys experienced in class and complex litigation. Plaintiffs have retained competent and capable attorneys with significant experience in complex and class action litigation, including consumer class actions, FDCPA and TCPA class actions.  Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests that are contrary to or that conflict with those of the proposed Classes.

71.     <u>Predominance</u>.  Defendant has engaged in a common course of conduct toward Plaintiffs and members of the Classes.  The common issues arising from this conduct that affect Plaintiffs and members of the Classes predominate over any

individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

72. <u>Superiority</u>. A class action is superior to all other available methods for the fair and efficient adjudication of the controversy for the following reasons:

       a.    It is economically impractical for members of the Class to prosecute individual actions;

       b.    The Class is readily definable; and

       c.    Prosecution as a class action will eliminate the possibility of repetitious litigation.

73. A class action will cause an orderly and expeditious administration of the claims of the Classes. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

74. Class wide relief is essential to compel Defendant to comply with the TCPA and FDCPA. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the statutory damages in an individual action for violation of the TCPA and the FDCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

75. Defendant has acted on grounds generally applicable to the members of both Classes, thereby making final injunctive relief and corresponding declaratory relief with the respect to the Class as a whole appropriate. Moreover, the TCPA and FDCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

76. <u>Injunctive and Declaratory Relief Appropriate</u>. Defendant has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and

corresponding declaratory relief with respect to the Classes appropriate on a classwide basis. Moreover, on information and belief, Plaintiffs allege that the automated calls made by Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

## VI. FIRST CLAIM FOR RELIEF

77. Plaintiff re-alleges and incorporates by reference the above paragraphs as though set forth fully herein.

78. The foregoing act and omissions of Defendant and/or affiliates, agents, and or/or other persons or entities acting on Defendant's behalf constitutes numerous and multiple violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiffs Snyder and Mansanarez and members of the TCPA Class using an ATDS and/or artificial or prerecorded voice.

79. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of t1859-001he TCPA, Plaintiffs Snyder and Mansanarez and TCPA Class members are entitled to an award of $500 in statutory damages for each and every call placed in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

80. Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct that violates the TCPA by Defendant in the future.

## VII. SECOND CLAIM FOR RELIEF

81. Plaintiff re-alleges and incorporate by reference the above paragraphs as though set forth fully herein.

82.     The foregoing acts and omissions of Defendant constitute numerous and multiple knowing or willful, or both, violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiffs Snyder and Mansanarez and members of the TCPA Class using an ATDS and/or artificial or prerecorded voice.

83.     As a result of Defendant's knowing and willful violations of the TCPA, Plaintiff and each member of the Class are entitled to treble damages of up to $1,500 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

84.     Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting such willful conduct that violates the TCPA by Defendant in the future.

## VIII.  THIRD CLAIM FOR RELIEF

85.     Plaintiff re-alleges and incorporates by reference the above paragraphs as though set forth fully herein.

86.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the FDCPA, including but not limited to each of the above-referenced provisions of 15 U.S.C. § 1692 *et seq.*

87.     As a result of Defendant's knowing and willful violations of the FDCPA, Plaintiff and each member of the Class are entitled to statutory damages of up to $1,000 pursuant to 15 U.S.C. § 1692k.

88.     Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting such conduct that violates the FDCPA by Defendant in the future.

## IX.  JURY TRIAL DEMAND

Plaintiff demands a jury trial on each of the causes of action set forth above, including the amount of statutory damages.

## X.  PRAYERS FOR RELIEF

Wherefore, Plaintiffs respectfully pray that judgment be entered against Defendant Ocwen Loan Servicing, LLC, for the following:

A. Certification of the proposed Classes;

B. An injunction against further violations;

C. Damages pursuant to 47 U.S.C. § 227(b)(3) and 15 U.S.C. § 1692k;

D. Costs of suit reasonable attorneys' fees pursuant to statute and as part of a common fund, if any;

E. Such other and further relief as the Court may deem just and proper;

F. Appointment of Plaintiff Snyder as representative of the TCPA and FDCPA Classes;

G. Appointment of Plaintiff Mansanarez as representative of the TCPA Class;

H. Appointment of the undersigned counsel as counsel for the Classes;

I. A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA and FDCPA; and

J. Leave to amend this Complaint to conform to the evidence presented at trial.

Dated:    April 16, 2016

ANKCORN LAW FIRM, PC

By:  /s/ Mark Ankcorn
     Mark Ankcorn, N.D. Illinois #1159690
     Email:  mark@ankcorn.com
     11622 El Camino Real, Suite 100
     San Diego, California 92130
     Telephone:  (619) 870-0600
     Facsimile:  (619) 684-3541

Local Office:
ANKCORN LAW FIRM, PC
1608 South Ashland Avenue. #92015
Chicago, Illinois  60608-2013

Guillermo Cabrera
Email:  gil@cabrerafirm.com
Jared Quient
Email:  jared@cabrerafirm.com
THE CABRERA FIRM, APC
600 West Broadway, Suite 700
San Diego, California 92101
Telephone:  (619) 500-4880
Facsimile:  (619) 785-3380

Beth E. Terrell
Email:  bterrell@tmdwlaw.com
TERRELL MARSHALL DAUDT
  &WILLIE PLLC
936 N. 34th Street, Suite 300
Seattle, Washington 98103
Telephone:  (206) 816-6603
Facsimile:  (206) 350-3528

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Mark Ankcorn, hereby certify that on the date indicated below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Chethan G. Shetty <cshetty@lockelord.com>
> Simon A. Fleischmann <sfleischmann@lockelord.com>
> Thomas J. Cunningham <tcunningham@lockelord.com>
> LOCKE LORD LLP
> 111 South Wacker Drive
> Chicago, Illinois 60606
> Telephone: (312) 443-0700
> Facsimile: (312) 443-0336
>
> *Attorneys for Defendant*

Dated:    April 16, 2016              */s/ Mark Ankcorn*